# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAURICE L. ROBINSON, | ) |
|     Plaintiff, | ) Case No. 17 CV 1051 |
| | ) |
| v. | ) Judge Joan B. Gottschall |
| | ) |
| RANDY PFISTER, et al. | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In his Second Amended Complaint ("SAC," ECF No. 83), former Illinois prisoner Maurice L. Robinson ("Robinson") brings claims under 42 U.S.C. § 1983; the Eighth and Fourteenth Amendments; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 et seq., against eight defendants. *See* SAC 7–14. Three motions to dismiss the SAC for failure to state a claim upon which relief can be granted are before the court. For the following reasons, the court grants two of the motions and denies the third.

### I. Background

Robinson filed his original complaint pro se. ECF No. 1. The court screened the complaint and dismissed certain claims and defendants. *See* ECF No. 5 (screening order); 28 U.S.C. §§ 1915(b)(1), (2). Randy Pfister ("Pfister"), warden of the Illinois Department of Corrections ("IDOC") Stateville Correctional Center ("Stateville"), appeared and moved to dismiss the complaint against them. The court granted his motion by order dated August 18,

2017. ECF No. 24. At a hearing held February 23, 2018, Robinson's lawyer obtained leave to file an amended complaint. ECF No. 45; *see also* Am. Compl., ECF No. 46.

Two motions to dismiss the amended complaint for failure to state a claim followed. ECF Nos. 54, 73. Before his deadline to respond to the second motion, Robinson moved for leave to file a second amended complaint. ECF No. 79. The court granted the motion on December 7, 2018, ECF No. 82, and the SAC was filed on December 14, 2018.

When deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a complaint, the court assumes that the operative complaint's well-pleaded factual allegations are true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). The SAC alleges as follows:

Robinson has a prosthetic lower left extremity. SAC ¶ 17. Beginning on or about December 10, 2015, he spent five months in the Illinois Department of Corrections ("IDOC") Stateville Correctional Center ("Stateville") in Joliet, Illinois. SAC ¶ 15. Robinson alleges that he requested a shower chair during his initial medical evaluation and that he subsequently asked "several different staff at Stateville" for a chair. SAC ¶ 20. But Robinson never received a shower chair, and his "needs were continually ignored." SAC ¶¶ 21–23. As a result of not showering for five months, Robinson developed body sores; they were not treated until he was transferred to another IDOC facility. SAC ¶¶ 23–33.

Robinson names eight defendants in the SAC. He sues IDOC and Wexford, a private company which provides healthcare services at Stateville, and Stateville itself as a defendant. *See* SAC ¶¶ 10–12. The court refers to Will County, Illinois ("Will County") and the City of Crest Hill collectively as the Will County defendants. SAC ¶¶ 13–14. The final three

defendants are individuals: Pfister, Stateville's warden; Mary Schwarz ("Schwarz"), the physician's assistant who conducted Robinson's medical intake procedure; and Ester Martin ("Martin"), a nurse supervisor at Stateville. SAC ¶¶ 7–9, 15. Wexford employs Schwarz; Pfister and Martin work for IDOC. SAC ¶¶ 7–9.

The SAC has four counts. Counts I and IV arise under 42 U.S.C. § 1983. Count I alleges that IDOC, Pfister, Martin, and Schwarz were deliberately indifferent to Robinson's serious medical needs in violation of the Eighth and Fourteenth Amendments. SAC ¶¶ 41–47. In Count IV, Robinson pleads that the "de facto" policies and customs of IDOC, Stateville, and the Will County defendants caused the above violations in that the named defendants did not "provide the equipment required to accommodate and provide adequate medical care to detainees with prosthetic limbs." SAC ¶ 68. Counts II and III assert, respectively, ADA and Rehabilitation Act claims against Stateville, IDOC, and the Will County defendants for failing to accommodate Robinson's disability by providing a shower chair. SAC ¶¶ 50–66.

## II. Legal Standard

A Rule 12(b)(6) motion "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012) (internal quotation marks omitted). A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as

true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### III. Analysis

The separate motions filed by (1) Wexford; (2) Pfister and IDOC; and (3) the Will County defendants sometimes raise overlapping issues.

### A. **Stateville Is Not a Suable Entity**

Robinson names the Stateville Correctional Institution as a defendant separate from the IDOC, Pfister, and the individual defendants. SAC ¶ 10. Illinois law determines whether Stateville can be sued in its own name. *See* Fed. R. Civ. P. 17(b). District courts in Illinois have held uniformly that "Stateville Correctional Center is not a suable entity." *Lee v. Lemke*, 1996 WL 166944, at *1 (N.D. Ill. Apr. 15, 1996) (citing *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991)); *accord Taylor v. Stateville Dep't of Corr.*, 2010 WL 5014185, at *2 (N.D. Ill. Dec. 1, 2010); *see also Williams v. I.D.O.C. Law Library Program*, 1997 WL 106174, at *5 (N.D. Ill. Jan. 27, 1996); *cf. Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam) (county joint not a suable entity under Illinois law). Robinson cites no authority interpreting Illinois law differently. *See* Reply 6–7, ECF No. 120.

Instead, Robinson argues that even if Stateville is not amenable to suit under Illinois law, Title II of the ADA authorizes suit against it as a public entity. Reply 7. Title II of the ADA declares that no qualified person with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination" by a state or local unit of government. 42 U.S.C. § 12132; *see also Brumfield v. City of Chicago*, 735 F.3d 619, 629–30 (7th Cir. 2013).

4

The definition of a covered public entity includes "any State or local government" and "any department, agency . . . or other instrumentality of a State or States or local government[.]" 42 U.S.C. §12131(1)(A)-(B). Robinson appears to argue that even if Stateville is not a department or agency of the Illinois government, it nevertheless qualifies as an "instrumentality" of IDOC. This argument is foreclosed by *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000). *Walker* holds that the IDOC (or its director sued in his or her official capacity) is the "proper defendant" in a prisoner suit under Title II of the ADA. *Id.*

Robinson also cites *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899 (N.D. Ill. 2009), to show that Stateville is suable. Reply 7. As explained in Part III.C of this opinion, the *Phipps* court analyzed whether "showers, toilets, and sinks" are programs or services for ADA purposes. *See Phipps*, 681 F. Supp. 2d at 915. Because *Phipps* does not purport to decide whether a prison is amenable to suit under Illinois law, it does not support Robinson's inclusion of Stateville as a defendant. Stateville is dismissed.

### B. *Monell* **Liability of Wexford and The Will County Defendants (Counts I and IV)**

Wexford and the Will County defendants argue that the SAC does not state plausible claims for imposing liability under § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The principles of *Monell* apply equally to municipalities and to "§ 1983 claims brought against private companies [such as Wexford] that act under color of state law." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014)); *see also Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018). In short, to satisfy *Monell* the defendant's policy, practice, or custom must be the "moving force of the constitutional violation." *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (quoting *Monell*, 436 U.S. at 694) (applying

5

rule to private corporation); *see also Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (using "direct cause" as a synonym for "moving force" (quoting *Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998)). Furthermore, the policymakers responsible for the challenged decision must have been "deliberately indifferent to a known or obvious risk that a policy or custom would lead to constitutional violations." *J.K.J. v. Polk Cty.*, 928 F.3d 576, 588 (7th Cir. 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407, 410 (1997)).

A custom or policy may be formal or informal. Robinson may satisfy *Monell* by "demonstrating that [a Wexford formal] policy is itself unconstitutional." *Minix,* 597 F.3d at 832 (citing *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000). Alternatively, *Monell* liability may be predicated on "a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *J.K.J.*, 928 F.3d at 587 (citing *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). When a widespread practice is at issue, deliberate indifference may be established with "'a series of bad acts' creating an inference that municipal officials were aware of and condoned the misconduct of their employees." *Minix*, 597 F.3d at 832 (quoting *Churchich*, 161 F.3d at 1043); *J.K.J.*, 928 F.3d at 589. Finally, *Monell* liability may be based on a single decision where "'an official with final policy-making authority' acted for the corporation." *Whiting*, 839 F.3d at 664 (citing *Thomas*, 604 F.3d at 303); *see also Bradley v. Vill. of Univ. Park, Ill.*, 929 F.3d 875, 884–85 (7th Cir. 2019).

Robinson's first theory fails under *Monell* itself. He pleads that Wexford is vicariously liable for Schwarz's constitutional violation, and for any other violations Wexford employees committed, under the doctrine of respondeat superior. SAC ¶ 43. *Monell* expressly rejected

respondeat superior liability under § 1983.  *Monell*, 436 U.S. at 492–94; *see also Beard*, 900 F.3d at 953; *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).  Wexford's liability under § 1983 cannot be based on the bare fact that Wexford employed Schwarz.

*1. Alleged Policies and Customs*

Robinson points to no formal or express policies in the SAC or in his briefing.  He cites the following allegations in the SAC to support his *Monell* theories.  First, he pleads that he "requested a shower chair from several different staff at Stateville on multiple occasions."  SAC ¶ 20, and "Pfister and Martin were aware of [his] requests for a shower chair," SAC ¶ 22.  Also, Wexford and Martin did not "properly supervise . . . Schwarz."  SAC ¶¶ 27, 28.  Finally, Robinson says that he filed a prison grievance (not described or in the record), that Pfister was aware of it, but he took no action.  SAC ¶¶ 34, 35.

Also, under the headings for Counts I and IV are several informal customs and practices that allegedly caused the constitutional violations.  Robinson pleads that "Defendants' failure to provide Plaintiff with accommodations illustrates Defendants' customs and/or 'a series of bad acts,' both of which are unconstitutional," SAC ¶ 46.  Under Counts I and IV Robinson alleges that Wexford, Stateville, and the Will County defendants had "*de facto* policies" of "fail[ing] to properly provide the equipment required to accommodate and provide adequate medical care to detainees with prosthetic limbs," SAC ¶¶ 68, 69(e).  Four similar additional customs are listed: the "failure to provide shower chairs or other reasonable accommodations;" the "failure to provide accessible shower facilities for detainees with prosthetic limbs;" the "failure to provide proper medical care to detainees with prosthetic limbs;" and the "failure to properly train, supervise, discipline, monitor, counsel, and otherwise control staff in the provision of reasonable

7

accommodations to disabled detainees." SAC ¶¶ 69(a)-(d). Finally, Robinson specifically alleges that defendant did not properly supervise Schwarz. SAC ¶ 28.

### *2. The Will County Defendants*

These allegations do not state a plausible claim that a custom or policy of the Will County defendants was the moving force behind any constitutional violation. Robinson alleges that Stateville is located within Will County and Crest Hill's geographic boundaries, but he does not specify how any policy of either Will County defendant affected his efforts to obtain a shower chair. *See* SAC ¶¶ 13, 14. In briefing, Robinson asserts that policymakers for the Will County defendants were "bound" to have been aware of his efforts to obtain a shower chair and so condoned or approved the conditions he encountered. Resp. to Mot. to Dismiss 10, ECF No. 115. This is rank, and implausible, speculation. *See Twombly*, *supra*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (citation omitted)). Robinson does not allege, or even suggest, that he sought assistance from a Will County or Crest Hill policymaker or anyone else outside Stateville. *See* Resp. 5. And, unlike with Wexford, there is no reason to believe that the Will County defendants were responsible for any relevant aspect of Stateville operations. IDOC, not local officials, runs Stateville and other state prisons. *See*, *e.g.*, *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Diaz v. Davidson*, 799 F.3d 722, 723 (7th Cir. 2015). Because the SAC does not raise Robinson's right to relief under *Monell* above the speculative level, his § 1983 claims against the Will County defendants must be dismissed. *See Bingham v. Baker*, 2016 WL 8711599, at *4 (N.D. Ill. Apr. 15, 2016) (citing *Vines v. Beth*, 2014 WL 2110024, at *2 (E.D. Wis. May 20, 2014)) (dismissing Stateville prisoner's medical deliberate indifference claims against Will County under *Monell*).

### 3. Wexford

Robinson states a plausible *Monell* claim against Wexford, however. As the SAC alleges, Wexford provides healthcare services to Stateville prisoners under contract with the IDOC. *Beard*, 900 F.3d at 953; *Rasho*, 856 F.3d at 478. Though each is no more than a sentence long, the SAC's descriptions of informal Wexford customs satisfy federal pleading requirements. The Seventh Circuit drew a line between conclusory pleading of customs and policies and well-pleaded facts in *McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011). On one hand the plaintiff's allegations that "the City, . . . acting under color of law, at the level of official policy, practice, and custom, with deliberate . . . indifference to McCauley's constitutional rights, authorized, tolerated, and institutionalized the practices" challenged had to be disregarded as reciting the legal ingredients of a *Monell* claim. *Id.* at 617–18 (brackets omitted). On the other hand, the factual allegations that could not be disregarded often consisted of one sentence identifying the specific practice or custom. For instance, the complaint in *McCauley* alleged that the violation was caused by a policymaker "maintaining a custom and practice of failing to adequately train officers concerning the necessity of promptly arresting individuals guilty of violating protective orders." *Id.* (alteration in original) (citation and internal quotation marks omitted). Robinson's descriptions of the "de facto policies" such as "fail[ing] to properly provide the equipment required to accommodate and provide adequate medical care to detainees with prosthetic limbs," likewise qualify as well-pleaded facts that must be accepted as true. SAC ¶ 68.

Wexford argues that the SAC falls short because it relies solely on Robinson's efforts to get a shower chair without identifying other incidents from which Wexford's deliberate indifference can be inferred. Mot. to Dismiss 7–9, ECF No. 86. Wexford relies on *Minix*, *supra*,

9

for the proposition that a complaint must list additional incidents to allege a plausible deliberate indifference claim. *See id.* However, *Minix* applied summary judgment standards, not pleading standards. *See Minix*, 597 F.3d at 829. Wexford demands more detail in the complaint than federal pleading standards require. The question whether the complaint must list other incidents does not appear to have been raised in *McCauley*. *See McCauley*, 671 F.3d at 617–19. *McCauley* provides some helpful guidance by reminding courts that "[m]aking the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense,'" *id.* at 616 (quoting *Iqbal*, 556 U.S. at 580), and that "[t]he required level of factual specificity rises with the complexity of the claim," *id.* at 616–17 (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Common sense dictates that a prisoner with a prosthesis does not come to Stateville, or other prisons, every day. Requiring a plaintiff inmate to list other incidents involving similar prisoners without some discovery would therefore be tantamount to closing the courthouse door. In his response, Robinson's recruited counsel specifically represented that he needs discovery to determine whether Wexford violated its own policies. *See* ECF No. 102 at 7. Discovery on these issues would not be overly complex or burdensome. Accordingly, common sense teaches that general allegations of deliberate indifference like those in the SAC survive a motion to dismiss. *See, e.g., Harper v. Wexford Health Sources, Inc.*, 2016 WL 1056661, at *3 (N.D. Ill. Mar. 17, 2016) (Gottschall, J.) (allegation of the existence of a specific policy—namely, cost-cutting measures—that resulted in the plaintiff's inadequate medical care stated a claim); *Quinn v. Hardy*, 2013 WL 4836262, at *4 (N.D. Ill. Sept. 10, 2013) (allegations that the plaintiff's requests for medical attention were "systematically ignored" stated *Monell* claim); *but see Arita*

10

*v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) and cases cited therein.

Additionally, the court cannot ignore the assertions in Robinson's response that he sought a shower chair from several Wexford employees at Stateville. Resp. to Mot. to Dismiss 7; *see also* SAC ¶ 22. A plaintiff may rely on new facts in response to a Rule 12(b)(6) motion so long as they are "'consistent with the well-pleaded complaint.'" *Dixon v. Cty. of Cook*, 819 F.3d 343, 349 (7th Cir. 2016) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010)). From Robinson's allegations that Martin and Wexford failed to supervise Schwarz, it is reasonable at the pleading stage to infer that Martin was a policymaking official. *See* SAC ¶¶ 26, 28. With the benefit of every reasonable inference, the SAC, as supplemented, adequately alleges at least one Wexford policymaking official, Martin, was aware of and disregarded serious medical risks to Robinson. *See id.*. Because the SAC alleges plausible *Monell* claims, Wexford's motion to dismiss is denied.

### C. **Pfister's Personal Involvement (Count I)**

Pfister seeks dismissal of the § 1983 claims against him on personal involvement grounds. As with claims governed by *Monell*, individual capacity suits under § 1983 cannot be based on the doctrine of respondeat superior. *Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015). Rather, "[i]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix*, 597 F.3d at 834 (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003)). "While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have 'know[n] about the conduct, facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind

eye for fear of what they might see.'" *Rasho*, 856 F.3d at 478; *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Again, Robinson pleads that "Pfister and Martin were aware of [his] requests for a shower chair," SAC ¶ 22. Robinson also filed a prison grievance, a copy of which is not before the court, of which Pfister "was notified." SAC ¶¶ 34, 35. Yet he took no action. *Id.* These allegations do not state a plausible claim against Pfister because "for the purposes of a motion to dismiss, a warden cannot be assumed to be directly involved in the prison's day-to-day operations." *Steidl v. Gramley*, 151 F.3d 739, 741–42 (7th Cir. 1998) (failure to protect case). The SAC alleges no personal involvement by Pfister beyond being aware of Robinson's grievance and failing to act on it. *See* SAC ¶ 34. Robinson does allege that Pfister and others "condoned" the violations, but the SAC says that Pfister did so "by continuously failing to accommodate Plaintiff." SAC ¶ 47. Hence the SAC, even construed favorably to Robinson, seeks to hold Pfister liable for failing to act on Robinson's grievances. *See id.* If a complaint pleads no "personal involvement by the warden [in an inmate's medical care] outside the grievance process," that is insufficient "to state a claim against the warden." *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012), quoted with alterations in *Neely v. Randle*, 2013 WL 3321451, at *3–4 (N.D. Ill. June 29, 2013). This is because a warden is "entitled to relegate to the prison's medical staff the provision of good medical care," and so "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *Id.* (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (first quotation) and *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) (second quotation)); *see also Burns v. Fenoglio*, 525 F. App'x 512, 515–16 (7th Cir. 2013).

Robinson's counter-argument is difficult to understand. He appears to concede that the SAC alleges no personal involvement by Pfister in his medical care. Resp. to Mot. to Dismiss 5, ECF No. 119. But, argues Robinson, Pfister may be held liable for enforcing a custom "of denying accommodation requests." *Id.* If Robinson means that IDOC has a policy of denying accommodation requests across the board, he does not plead that theory. More importantly, Robinson does not allege that Pfister was aware of such a policy or that he was personally involved in creating or administering it.

The court also finds unpersuasive Robinson's repeated citations to the factual and procedural background of *Vance v. Peters,* 97 F.3d 987, 988 (7th Cir. 1996). *See* Resp. to Mot. to Dismiss 5, ECF No. 119. If anything, *Vance*, a summary judgment case, supports dismissing Pfister. The *Vance* court affirmed summary judgment for the prison warden even though the plaintiff testified that she wrote him a letter complaining of her situation. 97 F.3d at 994. The Seventh Circuit explained that she did "not supply, in her description of the purported letter, any detail to permit the conclusion that the letter sufficiently advised the warden of the situation to require her intervention." *Id.* at 994. The SAC does not even provide a conclusory description of Robinson's grievance, much less enough well-pleaded facts to permit a plausible inference that the grievance apprised Pfister of the need to intervene. *See Rasho*, 856 F.3d at 478–79; *Burks*, 555 F.3d at 595. Robinson's § 1983 claims against Pfister are dismissed.

### D. ADA and Rehabilitation Act Claims (Counts II and III)

As previously stated, Title II of the ADA provides that no qualified person with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination" by a state or local unit of government. 42 U.S.C. § 12132; *see also Brumfield v.*

13

*City of Chicago*, 735 F.3d 619, 629 (7th Cir. 2013). The Rehabilitation Act includes the addition of "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Here, "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 671 (7th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 716 n.4 (2005)) (other citations omitted). To state a claim under both statutes plaintiff need only allege that (1) he is a qualified person (2) with a disability and (3) the [defendant] denied him access to a program or activity because of his disability." *Id.* at 672 (citations omitted).

### *1. Receipt of Federal Funding*

Robinson alleges that Wexford, IDOC, and Will County receive federal funding "on information and belief." SAC ¶ 59. Wexford argues that this allegation should be disregarded as a "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). *See* Mot. to Dismiss 11, ECF No. 86. The court cannot agree. "When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are 'based on secondhand information that [he] believes to be true.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (quoting Black's Law Dictionary 783 (7th Ed. 1999)) (other citation omitted). The Seventh Circuit has approved pleading on information and belief even under the heightened fraud pleading standard, *see* Fed. R. Civ. P. 9(b), if the plaintiff explains why the facts cannot be pleaded and "provide[s] 'the grounds for his suspicions.'" *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016) (quoting *Pirelli Armstrong*, 631 F.3d at 443). Under the less demanding Rule 8(a)(2) applicable here, courts have "routinely" found allegations on information and belief to be

sufficient to survive a Rule 12(b)(6) motion. *Tr. of the Auto. Mech.'s Indus. Welfare & Pension Funds Local 701 v. Elmhurst Lincoln Mercury,* 677 F. Supp. 2d 1053, 1054 (N.D. Ill. 2010) (citing *Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.)) (other citation omitted); *see also Simonian v. Blistex, Inc.*, 2010 WL 4539450, *3 (N.D. Ill. 2010) ("[N]othing in either *Twombly* or *Iqbal* suggests that pleading based upon 'information and belief' is necessarily deficient."); 5 Wright & Miller, Federal Practice & Procedure § 1224 (West 2019). Robinson's lawyer represents that he pleaded on information and belief because discovery regarding federal funding, if any, received is necessary. Resp. Mot. to Dismiss at 9, ECF No. 102. This representation is not manifestly unreasonable given the likely complexity of the issue and Wexford's superior access to relevant information. Wexford's motion to dismiss the SAC's allegations made on information and belief will therefore be denied.

### 2. Showering is a "Program" or "Service"

Wexford also contends that nothing in the SAC plausibly shows that he was denied access to a "program" or "service" on account of his disability. Wexford cites no authority in support of its argument. *See* ECF No. 86 at 11–12. Robinson relies heavily on *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009), which rejected similar arguments.

After *Phipps*, the Seventh Circuit held squarely that a prisoner stated a claim under the ADA and Rehabilitation Act based on the absence of grab bars in prison showers. *Jaros*, 684 F.3d at 672. On the issue presented here, the Seventh Circuit held that "[a]lthough incarceration is not a program or activity, the meals and showers made available to inmates are." *Id.* (citations omitted). Under *Jaros*, Stateville's prisoners' access to showers are programs and services to which the ADA and Rehabilitation Act apply.

15

### 3. Wexford and the Will County Defendants' Involvement

Finally, Wexford and the Will County defendants argue that the SAC states no claim that any of them was involved in, or had the ability to affect, the denial of Robinson's access to shower facilities. Wexford cites no authority in support of its argument. *See* Mot. to Dismiss 11–12, ECF No. 86. It is reasonable to infer from the SAC's allegations that Schwarz and perhaps Martin had the power to approve a shower chair for Robinson. *See* SAC ¶¶ 20, 22. So Wexford's argument fails on its own terms.

The Will County defendants make an additional argument under the ADA and the Rehabilitation Act's plain language. They contend that a public entity has no responsibility for providing access to programs and services provided by another public entity, here Stateville. ECF No. 102 at 3–4. This argument strikes the court as more complex than it first appears, and the briefing only skims its surface.

The Will County defendants' argument may instead be resolved under settled causation principles. In the Seventh Circuit "a plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim under Title II of the ADA." *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (en banc) (also interpreting the Rehabilitation Act). Liability under Title II can be established by showing that "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Id.* (quoting *Washington v. Ind. High Sch. Athletic Assoc.*, 181 F.3d 840, 847 (7th Cir. 1999)). The SAC satisfies none of those standards with well-pleaded facts. As explained above in the analysis of Robinson's *Monell* claim against the Will County defendants, the SAC does not plausibly suggest that they were aware of his requests or had the power, formal or informal,

to assist him. Another way of saying this is that Robinson pleads no failure to accommodate him by the Will County defendants. They must therefore be dismissed from Counts II and III as well.[1]

### IV. Conclusion

For the reasons stated, Wexford's motion to dismiss the SAC is denied. The Will County defendants' motion to dismiss and Stateville and Pfister's motion to dismiss are granted. Defendants Pfister, Stateville, Will County, and the Village of Crest Hill are dismissed.

Date:   September 11, 2019
　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　Joan B. Gottschall
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[1] The court does not reach the Will County defendants' alternative contentions that plaintiff has engaged in group pleading and that his claims against them are time-barred.