FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE L. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 1051 |
| | ) | |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| RANDY PFISTER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## **Memorandum Opinion and Order**

The parties jointly move the court to enter a protective order governing the confidentiality and disclosure of discovery material. At issue are the parties' proposed changes to this court's model confidentiality order ("model order"), discussed more fully below, broadening the scope of "confidential information" to include all "written policies" of defendant Wexford Healthsources, Inc., ("Wexford") and "any documents that reference" Wexford's written policies. Rule 26(c) of the Federal Rules of Civil Procedure requires the parties to show "good cause" for entry of a protective order. Because good cause has not been shown for the parties' proposed changes to the model order, the court denies the motion in part.

Upon a showing of "good cause," a protective order may be entered to avoid "annoyance, embarrassment, oppression, or undue burden or expense" that may attend the discovery process.[1] Fed. R. Civ. P. 26(c)(1). Protective orders governing the exchange and dissemination of

---

[1] There is a distinction between discovery material produced by a party but never filed with the court and discovery material that is made a part of the court record and on which the court relies. *See generally id.* at 1073–75 (discussing First Amendment principles governing the public's right of access to discovery material filed with the court). By its terms, and consistent with this court's model order, the proposed order here does not authorize the filing of any document under seal, regardless of whether it is designated as confidential during discovery. Proposed Order ¶ 7.

1

confidential information are often entered at the outset of discovery. *Bond v. Utreras*, 585 F.3d 1061 1067 (7th Cir. 2009). An agreed confidentiality order cannot be rubber stamped. The Seventh Circuit has held that "a district court is required to 'independently determine if good cause exists' before judicially protecting discoverable documents from third-party disclosure." *Salmeron v. Enter. Recovery Sys. Inc.*, 579 F.3d 787, 795 (7th Cir. 2009) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir 1994) (internal quotations and other citations omitted)). Even if they agree to the entry of a protective order, the parties still bear the burden to convince the court that good cause exists. *Jepson*, 30 F.3d at 858 (citing *Pub. Citizen v. Liggett Grp. Inc.*, 858 F.2d 775, 798 (1st Cir. 1988)) (other citation omitted). The Seventh Circuit has compared the duty of a district court to determine independently whether there is good cause to enter a protective order to the fiduciary duties a court must discharge when considering a proposed class action settlement. *See id.* (citing Arthur R. Miller, *Confidentiality, Protective Orders and Public Access to the Courts,* 105 Harv. L. Rev. 427, 492 n. 322 (1991)).

One of the central issues in this case is the medical care received by plaintiff Maurice Robinson ("Robinson") during his five-month stay at the Illinois Department of Corrections ("IDOC") Stateville Correctional Center ("Stateville"). *See* 2d Am. Compl. ("SAC") ¶ 17, ECF No. 85. Robinson has a prosthetic lower left extremity. *Id*. ¶ 17. He alleges that his requests for a shower chair while at Stateville were "continually ignored." SAC ¶¶ 21–23. Robinson allegedly developed body sores as a result of not showering for five months. *See* SAC ¶¶ 23–33; *see also Robinson v. Pfister*, 2019 WL 4305527, at *1–2 (N.D. Ill. Sept. 11, 2019) (summarizing Robinson's allegations). Robinson, who is presently represented by recruited counsel, brings Eighth and Fourteenth Amendment claims under 42 USC § 1983, as well as claims under the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973,

29 U.S.C. § 794(a), against Wexford and various state officials. Wexford provides healthcare services at Stateville. *See* SAC ¶ 8.

Along with its Local Rules, this court has promulgated a model confidentiality order. N.D. Ill. Local Rules at 126 (2019) ("Form L.R. 26.2). Paragraph two of the model order defines "confidential information" that may be designated as subject to the order. Seven categories are listed: "(a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party." [2] N.D. Ill. Local Rules at 126–27. A footnote to the model order provides: "If protection is sought for any other category of information, the additional category shall be described in paragraph 2 with the additional language redlined to show the change in the proposed Order." *Id.* at 127 n.22.

The parties here submitted a redline copy of the model order. They propose to add two additional categories of confidential information to paragraph two and to broaden the scope of paragraph 2(g) as follows:

> (g) personnel or employment records of any person;
> (h) the written policies of Wexford Health Sources, Inc.; or
> (i) any document created by or referencing Wexford Health Sources, Inc.,
> its agents or employees which reflect the policies, practices, or procedures
> of Wexford Health Sources, Inc., and/or the implementation of the
> policies, practices, or procedures of Wexford Health Sources, Inc.

Proposed order at 2.

---

[2] The following sentence appears after the list in paragraph two: "Information or documents that are available to the public may not be designated as Confidential Information." N.D. Ill. Local Rules at 127.

3

The parties argue that "security concerns" justify protecting all personnel and employment records in ¶ 2(g), rather than just those of non-parties. Jt. Resp. ¶ 5, ECF No. 141. Without citing authority, the parties contend that "employees of the IDOC and Wexford have a legitimate interest in protecting certain personal information including, but not limited to, their home address [sic] and other personal identifiers, from Plaintiff and others not engaged in this litigation." *Id.* The problem with this argument is that the model order already protects "personal identity information" in paragraph 2(d). Paragraph 2(d) applies to parties and nonparties. The parties here suggest no reason why paragraph 2(d) is not broad enough to address their legitimate security concerns and prevent the disclosure of the home addresses of Wexford and IDOC employees. The court therefore rejects the proposed modification to paragraph 2(g) as unsupported by good cause.

Regarding the broad language of proposed paragraphs ¶¶ 2(h) and (i) making all of Wexford's "written policies" confidential, the parties contend that the paragraphs "acknowledge Wexford's interest in maintaining the confidentiality of its trade secrets and other protected confidential information." Jt. Resp. ¶ 7. Subject to the good cause requirement, a protective order may require[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Indeed, the model order and the proposed order allow the parties to designate as confidential "information that reveals trade secrets" and "research, technical, commercial or financial information that the party has maintained as confidential." Model Order ¶¶ 2(b)–(c); Proposed Order ¶¶ 2(b)–(c). With proposed paragraphs 2(h) and 2(i), the parties want this court effectively to pre-determine ("acknowledge") that each and every Wexford written policy, and

4

anything derived from a Wexford written policy, is presumptively protected by trade secret law or otherwise confidential.

In this court's extensive experience with § 1983 litigation brought by detainees and prisoners, Wexford's written policies have been routinely produced in discovery and filed in litigation without a motion to seal and without any claim by Wexford that the policy is confidential. *See, e.g.*, *Wilder v. Wexford Healthsources, Inc.*, 2015 WL 2208440, at *2 (N.D. Ill. May 8, 2015); *Heard v. Ill. Dep't of Corrs.*, 2012 WL 832566, at *7–8 (N.D. Ill. Mar. 12, 2012). To the court's knowledge, Wexford has never before claimed that every written policy document is confidential, and no party has sought such a broad protective order.

Nor do the parties cite any case in which such broad language has been approved. *See* Jt. Resp. ¶¶ 6–7. The only case the parties cite actually shows that good cause does not exist for entering the proposed order here. In *Gonzalez v. Feinerman*, the court modified a proposed protective order for reasons equally applicable here: the protective order proposed by Wexford was "open-ended in that it would prevent the disclosure of any and all documents that the parties believe should be protected." 2015 WL 249775, at *1 (S.D. Ill. Jan. 20, 2015), *prior opinion* 663 F.3d 311 (7th Cir. 2011).[3] The parties here do not narrow the definitions in ¶¶ 2(h) and (i) in any way comparable to the order entered in *Gonzalez*.

The parties have not otherwise shown good cause for including the broader language of ¶¶ 2(h) and (i). They suggest no specific example of a written document that would not be

---

[3] The court in *Gonzalez* limited the definition of confidential information to six "specific categories." *2015 WL 249775* at *1–2. Those categories bore at least some arguable rational relationship to Wexford's business interests. For example, information about Wexford's "general policies and procedures regarding the delivery, management, costs, levels, and standards of [sic] or related to healthcare services" may at least arguably be of interest to a competitor. *Id.* At *2. This court implies nothing about whether any of the language in *Gonzalez* is appropriate for inclusion in the protective order. That is the question before this court.

5

protected by the order's existing language allowing designation of trade secrets and other proprietary information as confidential (¶ 2(b)–(c)). *See* Jt. Resp. ¶¶ 6–7. The parties imply that disclosure of at least some of Wexford's written policies could inflict an unspecified competitive injury. *See id.* ¶ 6. Wexford, the parties represent, must bid against other companies for business providing healthcare services in jails and prisons. *Id.* ¶ 6. Nothing more about the bidding process or the potential competitive harm to Wexford has been explained. *See id.* It remains mystifying to the court how a written policy concerning a matter as ordinary as showering could harm Wexford's position when bidding. The parties here offer no more than boilerplate— "Conclusory statements—including 'broad allegations of potential harm' or competitive injury" which have been repeatedly held to be "insufficient to meet the good cause standard." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1085 (N.D. Ill. 2015) (citing *Chi. Mercantile Exch., Inc. v. Tech. Research Grp.*, LLC, 276 F.R.D. 237, 241 (N.D. Ill. 2011)) (other citation omitted). Because good cause has not been shown for "recognizing" that all of Wexford's written policies–no matter how mundane the subject–are presumptively confidential, paragraphs 2(h) and (i) must be, and are, rejected.

  For the reasons stated, the parties' joint motion for entry of a protective order is granted in part and denied in part. The parties' proposed protective order will be entered without the changes they propose to paragraph two.

Dated: June 24, 2020               /s/
                          Joan B. Gottschall
                          United States District Judge